[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#116)
The plaintiff, Ernest Lawrence, filed a revised complaint on October 15, 1991, alleging in three counts: (1) breach of contract; (2) malicious prosecution; and (3) intentional infliction of emotional distress, based on his termination from the defendant, Summit Corporation of America (hereinafter referred to as "Summit") by the defendant, Mario Mucciaro (hereinafter "Mucciaro"), a supervisor at Summit. The defendants filed an answer and special defenses on January 15, 1992, and the plaintiff responded to defendants' special defenses on January 27, 1992.
The plaintiff was hired as a plater by Summit on August 8, 1988. On June 6, 1989, the plaintiff was terminated from his employment with Summit by his supervisor, Mucciaro. The plaintiff refused the request of Mucciaro to leave Summit's premises after his termination. (See Mucciaro's Affidavit, p. 2) Mucciaro then called the Thomaston Police Department, who sent Officers Randy Graham and Blain Rogozinski to Summit. Police Officers Graham and Rogozinski told the plaintiff that he had to leave the premises. (See Officer Rogozinski's Affidavit, p. 2) The plaintiff stated to the officers that he wanted to talk to Mucciaro. (See Officer Graham's Affidavit, p. 2) The plaintiff was subsequently arrested when he refused further requests by the Officers to leave the premises. (See Officer Graham's Affidavit, p. 2) The plaintiff was then arrested by the said police officers on the charge of breach of the peace.
The defendants filed a motion for summary judgment on November 3, 1992. The defendants' motion was accompanied by a memorandum of law, excerpts from plaintiff's deposition, plaintiff's application for employment with Summit a copy of plaintiff's receipt acknowledging that he received a copy of Summit's employee handbook, affidavits of Officers Graham and Rogozinski's, a copy of the Officers' report which is identified in each Officers' affidavit, requests for admissions served upon, but not answered by plaintiff and the affidavit of Mucciaro.
The plaintiff filed a motion for extension of time within CT Page 2844 which to respond to the defendants' motion for Summary judgment and this was granted by the Honorable Joseph H. Pellegrino, on January 25, 1993. The plaintiff had until February 25, 1993, in which to file his objection to defendants' motion for summary judgment. The plaintiff has failed to file any objection.
A motion for summary judgment is made prior to the start of trial and states that the moving party is entitled to judgment as a matter of law because there is no genuine issue of material fact. Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116
(1990). A "material" fact is "a fact which will make a difference in the result of the case." Na-Mor, Inc. v. Roballey, 24 Conn. App. 215,217, 587 A.2d 427 (1991), quoting United Oil Co. v. Urban Development Commission, 158 Conn. 164, 379, 260 A.2d 596
(1969). The moving party shall support its motion with appropriate documents including "affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book 380. "[A]n affidavit should set forth the factual picture by a person who knows the facts." Town of Brookfield v. Candlewood Shores Estates, Inc., 201 Conn. 1, 9,513 A.2d 1218 (1986). The moving party has the burden of showing the absence of any genuine issue of material facts and the evidence is viewed "in the light most favorable to the nonmoving party." Connell, supra, 246, 247. However, the "party seeking to resist summary judgment may not rely on the underlying pleadings containing only general denials . . . to establish the existence of a `genuine issue' of material fact." citizens National Bank v. Hubney, 182 Conn. 310, 312, 438 A.2d 430 (1980). If the opposing party does not provide affidavits or other documentary evidence setting forth specific facts of a genuine issue of a material fact, "the court is entitled to rely on the facts stated in the affidavit of the movant." Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 11-12, 459 A.2d 115 (1983).
The defendants argue that Summit's Employee Handbook (hereinafter referred to as "Handbook") contains numerous disclosures expressly stating Summit's intent not to form a contract or any contractual relationship based upon the guidelines in the Handbook. The Handbook preface states in boldface type: "This handbook does not and is not intended to create either an express or implied contract of employment or a warranty of benefits." The preface further states in boldface type: "your employment with the Summit Corporation is on an at-will basis, which means that your employment and compensation can be terminated, at any time, at the option of either the company or you." The defendants cite CT Page 2845 the case of Finley v. Aetna Casualty, 202 Conn. 190, 520 A.2d 208
(1987), which stated that employers can protect themselves against employee contract claims based on statements made in personnel manuals by including appropriate disclaimers against an intention to form a contract. Id., 199, N.5.
The defendants further argue that Handbook 8.4, "Progressive Discipline", contains a specific contractual disclaimer.
 Summit Corporation of America has established a progressive discipline system to deal with violations of our work rules and other forms of misconduct.
 This section has been included as a guide for employees and supervisory personnel. It is not intended as a contractual undertaking, but rather the Summit Corporation's general philosophy on discipline and terminations.
 For the first violation of our work rules (see Section 8.5, Work Rules), you will receive a verbal warning. For the second offense, you will be given a written warning, for the third offense, you will be given a written warning with suspension. The fourth instance of misconduct may result in termination. Keep in mind that the second, third, and fourth violations do not necessarily have to be the same as the first. However, any violation may, at the discretion of management be grounds for immediate termination.
 One year after you have received a written warning, your Supervisor may, on a discretionary basis, request that it be removed from your personnel file if he/she feels that you have satisfactorily corrected your behavior. We will notify you if this should happen.
(Emphasis in original.)
As to plaintiff's second count based on malicious prosecution, the defendants argue that based on the affidavits of Police Officers Graham and Rogozinski, the Officers' police report, and CT Page 2846 the affidavit of Mucciaro, that there is no genuine issue as to any material fact in this regard because the affidavits clearly state that the Officers arrested the plaintiff after he refused to leave Summit Corporation's premises at the Officers' request and that the arrest was not at the request of Mucciaro, as the plaintiff alleges in his complaint.
As to plaintiff's third count for intentional infliction of emotional distress, the defendants argue that the Connecticut Worker's Compensation Act, Connecticut General Statutes 31-275, et seq., provides the exclusive remedy to an employee who receives injuries in the course of his employment. In the alternative, the defendants argue that the plaintiff has failed to produce facts that would give rise to the type of extreme and outrageous conduct necessary to support a cause of action for intentional infliction of emotional distress. The defendants argue that Mucciaro's request for plaintiff to leave the building following his termination, and the subsequent call to the police after the plaintiff's continued refusal to leave did not give rise to extreme and outrageous conduct. Further, the defendants argue again that the plaintiff's arrest was not made at the request of Mucciaro, but upon the Police Officers' own initiative when the plaintiff refused the Officers' order to leave the premises. (See Affidavits of Officers Graham and Rogozinski). Also, the defendants claim that plaintiff has failed to establish causation between defendants' conduct and plaintiff's alleged emotional distress because it was the plaintiff's own actions which lead to his arrest, and that any stress currently suffered by the plaintiff is not due to his loss of employment from Summit, but is due to his inability to find a full time job in this sluggish economy.
The traditional rule in Connecticut governing employment at will contracts of permanent employment, or employment for an indefinite term, is that such contracts are terminable at the will of either party without regard to cause. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 117-18, 544 A.2d 170 (1988). An implied contract depends upon the existence of an actual agreement between the parties. Id., 111. In Finley, supra, the court recognized that oral representations by supervisors and provisions in personnel manuals may create binding employment contracts. Thus, if a personnel manual states that employees will only be discharged for good cause, this statement could become part of the employment contract between the employer and employee, limiting the employer's right to discharge without good cause. Finley v. Aetna Casualty, 202 Conn. 190, 198, 199; see also Coelho, supra, CT Page 2847 116; Munson v. United Technologies Corp., 4 CSCR 748 (September 6, 1989, Hammer, J.).
There is no genuine issue as to any material fact as to count one of plaintiff's complaint. The plaintiff's application for employment, the preface to the Handbook, and sections within the Handbook, all state that the plaintiff's employment was to be at the will of either party. The plaintiff has presented no additional facts by way of affidavits or testimony or admissions that his employment contract was not at will. Further, the plaintiff in his complaint has not stated any facts regarding his termination or which section or sections of the Handbook the defendants violated by terminating his employment.
Therefore, the defendants' motion for summary judgment is granted as to count one of plaintiff's complaint.
The elements of malicious prosecution are that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause, and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." McHale v. W.B.S. Corp., 187 Conn. 444, 447,446 A.2d 815 (1982).
The defendants have included the police report and affidavits of Police Officers Graham and Rogozinski concerning the arrest of the plaintiff. Both Officers state in their affidavits that the plaintiff's arrest for breach of the peace was based on his failure to leave Summit's premises after being directed to do so by the Officers and that the plaintiff was very agitated at this and that it was necessary for them to use force to effectuate the plaintiff's arrest. The Officers further state that the arrest was not done at the direction or request of Mucciaro. The plaintiff has failed to include any documentation that this arrest was later nolled in the Winsted Superior Court, but even if he had it would not have changed the finding of the undersigned.
Therefore, the defendants' motion for summary judgment is granted as to plaintiff's second count in that there is no genuine issue as to any material fact.
 In order for the plaintiff to prevail in a case for liability under. . . . [the intentional CT Page 2848 infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.
DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991). "[T]he rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Petyan v. Ellis, 200 Conn. 253, 254, n. 5, 510 A.2d 1337 (1986). "`The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.' 1 Restatement (Second), Torts 46, comment (e)." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17,20, 597 A.2d 846 (1991). "`It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.' 1 Restatement (Second), Torts 46, comment (h)." Id., 19. n. 1.
The plaintiff's claim is not barred by the exclusivity of the Worker's Compensation Act. The Appellate Court in Fulco v. Norwich Roman Catholic Diocesan Corp., 27 Conn. App. 800, 809,609 A.2d 1034 (1992), held that "the process of being discharged normally occurs only once in an employee's tenure. It cannot be considered conduct regularly engaged in as an incident to employment."
The plaintiff has alleged in his complaint that his termination was in derogation of the Employee Handbook and did not follow Employee Handbook procedure. The plaintiff alleges that this, coupled with his arrest, constituted extreme and outrageous conduct on the defendants' behalf. It has been found that the CT Page 2849 defendants have not breached any contract in its termination of the plaintiff, and that the arrest of plaintiff did not encompass malicious prosecution. The court also finds that the plaintiff has no claim from which the tort of intentional infliction of emotional distress can arise.
Therefore, the defendants' motion for summary judgment is granted as to all counts of the plaintiff's complaint because there is no genuine issue of material fact in any of said counts.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN