MILTON R. ANDERSON ET AL. *v.* ZONING COMMISSION OF THE CITY OF NORWALK ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued November 7—decided December 17, 1968

*George J. Malinsky,* with whom, on the brief, was *Robert N. Grosby,* for the appellants (plaintiffs).

*Robert B. Devine,* for the appellees (defendants Gregory).

No appearance for the appellee (named defendant).

THIM, J. The defendant zoning commission extended a business zone to include about one acre of land which had previously been within a residential zone. The plaintiffs, who are property owners and residents in the neighborhood, have taken the present appeal from a judgment dismissing their appeal in the Court of Common Pleas.

## I

The plaintiffs claim that the trial court committed error by concluding that two members of the zoning commission, A. Peter Lomaglio and Lawrence Bottone, were not disqualified from participating in the hearing and the decision on the application for a change of zone. We do not agree with this claim for reasons hereinafter stated.

On September 22, 1966, Henry P. Gregory, Edward O. Gregory, and David W. Gregory applied to the zoning commission for a zonal change of a one-acre tract from residence A to business 1. The land was situated between Newtown Avenue and Chestnut Hill Road in Norwalk and was adjacent to other land owned by the Gregorys and on which they operated a business known as the Gregory Store. A public hearing was held on May 5, 1966, and the application was unanimously approved on June 15, 1966.

Several weeks before the public hearing, the chairman of the five-member zoning commission, R. Richard Gregory (hereinafter referred to as the chairman), disqualified himself from participating in the commission's deliberations relating to the Gregorys' application because he lived about one-half mile from the property in question and because some of his friends would oppose the application while others would support it. The chairman was not related to the applicants, and the trial court concluded that he had no direct or indirect interest of either a personal or financial nature in the Gregorys' store or in their land.

Shortly before the hearing on the Gregorys' application was scheduled to begin, one of the members of the commission informed the other members that he would be unable to attend the hearing. Owing to the lateness of this notification, the commission members were unsuccessful in securing an alternate. The chairman, who had already disqualified himself, suggested Lomaglio as a possible alternate. Lomaglio was chosen by the remaining members of the commission, and he served as an alternate member of the commission in all proceedings relating to the Gregorys' application for a change of zone. Lomaglio was employed in the mortgage department of the Merchants Bank and Trust Company, and the chairman of the commission was employed as the secretary of the same bank. Lomaglio did not, however, work in the chairman's department, and he was in no way controlled by him. At the time he suggested Lomaglio as an alternate, the chairman had announced his intention to leave the Merchants Bank and Trust Company and to become associated with another bank.

A second member of the commission, who partici-

pated in the application for a change of zone, was Bottone. Bottone was the vice-president of Thomas J. Riordan, Inc., and owned 45 percent of the common stock of that corporation. The Riordan corporation was engaged in the business of constructing commercial, industrial and residential buildings. The law firm of Devine and Vallerie had been representing the Riordan corporation since its inception in 1958. This firm, however, never represented Bottone. This same law firm also represented the Gregorys in their application for a change of zone.

The plaintiffs contend that Lomaglio's and Bottone's participation in the commission's consideration of the application for a change of zone violated § 8-11 of the General Statutes, which provides in pertinent part: "No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. In the event of such disqualification, such facts shall be entered on the records of the commission or board and the remaining members of the commission or board . . . shall choose an elector to act as a member of such commission or board in the hearing and determination of the particular matter or matters in which the disqualification arose."

It is a well-established principle in our state that a zoning official may not use his official power to further his own interests. This principle has its origin in the common law; *Low* v. *Madison,* 135 Conn. 1, 5, 60 A.2d 774; and has been declared to be the public policy of our state in at least two statu-

tory enactments. General Statutes §§ 8-11, 8-21. The reason for the establishment of this principle is obvious: a man cannot serve two masters at the same time and the public interest should not be entrusted to an official who has a pecuniary, personal or private interest which is or may be in conflict with the public interest. *Genkinger* v. *New Castle,* 368 Pa. 547, 552, 84 A.2d 303. A public official owes an undivided duty to the public whom he serves, and he is not permitted to place himself in a position which would subject him to conflicting duties or expose him to the temptation of acting in any manner other than in the best interest of the public. 43 Am. Jur., Public Officers, § 266.

Section 8-11 of the General Statutes requires a member of a zoning commission or zoning board of appeals to disqualify himself when the decision of the zoning authority could enure to his pecuniary benefit. This principle has been applied in such cases as *Josephson* v. *Planning Board,* 151 Conn. 489, 494, 199 A.2d 690; *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 480, 199 A.2d 162, and *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 134 A.2d 250. Section 8-11 also forbids a member of a zoning commission or board of appeals from participating in any matter in which he has a personal interest in the outcome. *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 500, 191 A.2d 250. A personal interest is either an interest in the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which im-

perils the open-mindedness and sense of fairness which a zoning official in our state is required to possess.

Local governments would, however, be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official. If this were so, it would not only discourage but might even prevent capable men and women from serving as members of the various zoning authorities. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. They must, however, also be mindful that to abrogate a municipal action on the basis that some remote and nebulous interest may be present would be to deprive unjustifiably a municipality, in many important instances, of the services of its duly-elected or appointed officials. *Van Itallie* v. *Franklin Lakes,* 28 N.J. 258, 269, 146 A.2d 111. The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case. *Aldom* v. *Roseland,* 42 N.J. Super. 495, 503, 127 A.2d 190.

In applying these principles in the instant case, we are satisfied that the court did not err in concluding that Lomaglio's participation did not contravene the prohibition of § 8-11 of the General Statutes. The chairman should not have suggested the name of an alternate after he had disqualified himself. He left, however, the actual selection of the alternate entirely in the hands of the remaining members of the commission. The trial court concluded that the chairman had no financial or personal interest in the outcome of the hearing. By suggesting the name of an alternate, the chairman was merely

trying to be helpful to the remaining members of the commission. Similarly, the trial court was correct in concluding that Bottone's participation did not violate § 8-11 despite the fact that the law firm which represented the Riordan corporation also represented the applicants for the change of zone. There is nothing to indicate that either Bottone or the Riordan corporation had any interest in the application before the commission. Furthermore, there is no indication that Bottone would be influenced by the fact that the law firm which represented the applicants also represented the Riordan corporation. On the contrary, there was evidence that Bottone was a member of the commission at an earlier date when the same law firm represented the same applicants who were then seeking a change of zone for the same property, and that Bottone voted to deny the application.

## II

The plaintiffs' second claim is that the commission acted in an arbitrary manner and abused its discretion in that a business zone was extended into a residential area despite the absence of a change in the residential character of the neighborhood.

A zoning authority acts in a legislative capacity when amending the regulations, and it is free to amend a regulation when present or future conditions reasonably indicate the need for a change. *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 208, 230 A.2d 606; *Pierrepont* v. *Zoning Commission,* 154 Conn. 463, 468, 226 A.2d 659. For a change of zone to be valid, it must satisfy two basic tests: (1) it must promote the public welfare, and (2) it must do so in a reasonable manner. *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 594,

145 A.2d 597. In the instant case, the applicants for a change of zone owned a business which was operated in a business zone adjacent to the property in question. The applicants proposed to construct a neighborhood shopping center of colonial design, which would conform with the residential character of the surrounding property. The proposed shopping area would contain ten or eleven stores, each with an area of approximately 800 square feet, and off-street parking facilities would exceed the legal requirement for the proposed commercial use.

The Norwalk master plan of zoning divides the city on the basis of two major types of uses: light intensity uses such as neighborhood residential and uses of greater intensity. The property in question is in a "light intensity use" class of the master plan. A planning expert testified that the proposed use would be in harmony with the master plan of development and that the extension of the business zone would not generate additional traffic. An appraiser testified that the convenience of neighborhood shopping centers would tend to increase rather than decrease the value of homes in the area. There had been a marked increase in the number of new homes in the neighborhood, and many of the area residents were in favor of the extension of the business zone.

The commission voted unanimously to extend the business zone to include the acre in question. The record reveals that whether the extension of the business zone would promote the public interest was a debatable issue. The court cannot substitute its judgment for that of the zoning commission when the issues are debatable and when the facts support, fairly and reasonably, the conclusion that the change of zone was proper. *Kutcher* v. *Town Planning Commission*, 138 Conn. 705, 709, 88 A.2d 538.

## III

The plaintiffs' final contention is that the action of the commission constitutes spot zoning. It should be clear from what we have said previously that there is no merit to this claim. The ultimate test for determining whether the extension of a business zone constitutes spot zoning is whether the extension is primarily an orderly development of an existing district which serves a public need in a reasonable way or whether it is an attempt to accommodate an individual property owner without any concern for the interests of the community. *Malafronte* v. *Planning & Zoning Board,* supra, 210; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241; *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 596, 145 A.2d 597; *Bartram* v. *Zoning Commission,* 136 Conn. 89, 93, 68 A.2d 308.

In the instant case, the applicants desired to expand their commercial enterprise into a residential zone. The record reveals that there was a need for additional shopping facilities in the neighborhood and that the applicants sought to satisfy this need by developing a small shopping center designed to cater primarily to residents in the neighborhood. The proposed shopping center is not at variance with the comprehensive plan of zoning for Norwalk. The zoning commission did not create a new zone but rather extended an already existing business zone at the dictate of public convenience, and the trial court did not err in sustaining the commission's decision. *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 429, 133 A.2d 612.

There is no error.

In this opinion the other judges concurred.